

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG  5 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

SOUTHWEST AIRLINES CO., §
§
    **Plaintiff,** §
§
v. §
§
QL2 SOFTWARE, INC., IGENTICA, §
LTD., and PROS REVENUE §
MANAGEMENT, L.P., §
§
    **Defendants.** §

Civil Action No._____

**3  05 C V 1 5 5 8 - L**

## COMPLAINT

Plaintiff Southwest Airlines Co. files this complaint in order to protect its valuable property and online distribution system from the unauthorized activities of defendants. Based upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other persons and matters, Southwest respectfully alleges as follows:

### Nature of the Action

1.    This is a suit to stop cyber-trespass and other wrongful conduct by online profiteers. Southwest seeks to stop the commandeering of its online fare data and fare distribution system by for-profit companies in the U.S. and abroad. These firms use or facilitate so-called "screen-scraping" software to access, use, search, and redistribute valuable online fare, scheduling, route, and availability data from Southwest, without its consent, all to profit off of Southwest. Southwest has no choice but to seek protection from this Court, to protect its valuable property, goodwill, reputation, and business and to ensure that its website remains a secure and valuable environment for customer transactions.

**Parties**

2.      Plaintiff Southwest Airlines Co. is a Texas corporation with its principal place of business in this District, at 2702 Love Field Drive, Dallas, Texas.

3.      Defendant QL2 Software, Inc. is a Washington corporation with its headquarters located at 316 Occidental Avenue South, Suite 410, Seattle, Washington 98104-3859.   QL2 may be served with process by serving the Texas Secretary of State, Citations Unit, 1019 Brazos Street, Room 214, James E. Rudder Building, Austin, Texas 78701, which then shall mail a copy of the process by registered or certified mail, return receipt requested, to its main offices listed above.

4.      Defendant Igentica, Ltd. is a U.K. company with its headquarters located at Merlin House, Brunel Road, Theale, Berkshire RG7 4AB, United Kingdom, and with development offices in Jalandhar, India.   Igentica may be served with process pursuant to the Hague Convention.

5.      Defendant PROS Revenue Management, L.P. ("PRM") is a Delaware limited partnership with its corporate offices in Texas, at 3100 Main Street, Suite #900, Houston, Texas 77002.  PRM may be served with process by serving its registered agent in Texas, George Thomas, at its corporate office address listed above.

**Jurisdiction**

6.      This Court has subject matter jurisdiction over the federal statutory claim in this action pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the claims in this Complaint that arise under the law of the State of Texas pursuant to 28 U.S.C. § 1367(a), because the state

law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

8.     This Court has personal jurisdiction over defendants because they are foreign or domestic corporations that committed torts in this District, breached a contract entered into in this District, violated Texas statutory law in this District, and systematically did, and still do, conduct business in this District. The injuries defendants inflict on Southwest are felt in this District, and defendants know that serious harmful effects from their conduct will occur here.

### Venue

9.     Venue lies properly in this Court pursuant to 28 U.S.C. § 1391. The claims asserted in this action arose in this District; a substantial part of the activities, conduct, and/or damages occurred in Texas; and defendants have substantial contacts with this District.

10.     Venue is proper in this Court because defendants direct commercial activity to residents of Texas, including residents of this District. Defendants intend to and will continue to market, advertise, and sell airline transportation-related products or services to residents in this District.

### Facts Giving Rise to This Action

**A.     Southwest's Operations**

11.     Southwest is the only major, short-haul, low-fare, high-frequency, point-to-point air carrier in the United States. Southwest is headquartered in Dallas and conducts substantial business operations throughout Texas.

12.     Southwest began service in 1971 with three jets serving Houston, Dallas, and San Antonio and has since grown into the fourth largest airline in the country. In the highly competitive and sometimes tumultuous airline industry, Southwest has maintained thirty

consecutive years of profitability.  This success is due not only to Southwest's low fares, but also to its commitment to customer service.

13.    In the more than thirty years that Southwest has been offering air transportation services, it has developed a substantial amount of goodwill with its customers by establishing itself as a customer-focused, low fare airline.

**B.    Southwest's Online Customer Service**

14.    In order to maintain its valuable reputation as a low-fare airline and to keep ticket prices low for its customers, Southwest relies on the Internet to conduct a substantial portion of its business.  In fact, Southwest was the first airline in the country to establish an informational and then interactive site on the World Wide Web accessible to the traveling public.

15.    Since 1994 Southwest has developed a privately-owned computer system located in this District, which includes the Southwest.com website and numerous supporting servers, databases, routers, networks, bandwidth, cabling, appliances, switches, filers, and firewalls ("Southwest.com").  Through Southwest.com, Southwest provides proprietary fare, route, schedule, and availability data to its actual and potential customers in an interactive format.  Southwest has invested substantial time and money in developing, compiling, and maintaining its proprietary computer system and website, and the fares contained in it.

16.    Southwest strives to provide its customers with the same friendly, unique "Southwest Experience" on the Internet that it provides in all its operations, from the moment a customer accesses Southwest.com to the moment he or she leaves the airport at the end of a trip. Southwest strives to make Southwest.com a user-friendly website, that displays its fares quickly, conveniently, accurately, and in a way that conveys the full breadth of Southwest's fares, even those that are not available for a particular itinerary.  To preserve its standards of customer

service, reputation, and goodwill, Southwest has chosen Southwest.com as the only website on which it distributes its fares.

17.    In the current online environment, it is particularly important for businesses like Southwest to ensure that their websites are secure. Numerous Internet scams, "phishing" schemes, breaches of financial databases, and harmful computer viruses have eroded consumer confidence in electronic commerce, and this affects Southwest's business. According to a recent survey, 33% of online shoppers concerned with Internet fraud are spending less money than they would if they were not concerned about such issues.

18.    Southwest makes its computer system, website, and the proprietary contents thereof available to consumers subject to certain terms and conditions of use that make it clear that the system and data displayed thereon is proprietary and owned by Southwest (the "Use Agreement"). The Use Agreement is referenced by interactive link on the Southwest.com homepage as well as each successive page of the website. It provides the terms and conditions under which users may access and use Southwest.com.

19.    The Use Agreement expressly prohibits use of Southwest.com for commercial purposes. It also prohibits use of any "deep-link," "page-scrape," "robot," "spider" or other automatic device to "access, acquire, copy or monitor any portion of the Southwest web site." The Use Agreement is available in text and also posted in robots.txt, a code that robots or other automatic devices read upon attempting to access a website.

20.    The Use Agreement for Southwest.com also states:

> Information concerning Southwest and its services, including flight schedules, routes, fares, text, graphics, button icons, audio and video clips, digital downloads, data compilations (including Customer and Rapid Rewards information), logos and information regarding the status of Southwest flights, etc. is referred to as "Company Information." Southwest owns all copyrights, trademarks, service marks, trade names

related to the Company Information and the Company Information is proprietary to Southwest.

21.    Indeed, Southwest's opposition to scraping of its website is well known, as it has had to resort to litigation to stop scrapers in the past. *See Southwest Airlines Co. v. FareChase, Inc.*, 318 F.Supp.2d 435 (N.D.Tex. 2004).

**C.    Defendants' Wrongful Conduct**

22.    Defendants manufacture, develop, license, use, or facilitate the use of "screen-scraping" software.   This software sends out electronic robots, spiders, or other automated scraping devices across the Internet to enter and search targeted airline industry websites, including Southwest.com, and extracts proprietary fares from the sites.

23.    Defendants' scraping is intense, invasive, and causes substantial traffic through the Southwest.com system, all while defendants have no intention of booking tickets for travel on Southwest or becoming Southwest customers.  Rather, they sell Southwest's fare data solely for their own commercial gain.  Their activities and use of Southwest's property are intentional and knowingly done without Southwest's consent and in violation of the Use Agreement.

24.    This unauthorized use of and intermeddling with Southwest.com uses valuable computer capacity.  To the extent that defendants use Southwest.com's capacity, they deprive Southwest of its ability to possess and use that capacity to serve legitimate customers.  If not stopped, defendants' scraping will increase, which could diminish response times and impair the functioning of Southwest.com.  This could force Southwest to allocate funds to pay for increased computer support and capacity, in effect subsidizing defendants' commercial commandeering of the website. Defendants' screen-scraping also frustrates Southwest's ability to evaluate and manage its business.

25.     Defendants have no business relationship with Southwest, which does not endorse or approve of their products or services. To trade off of Southwest's goodwill, reputation, and the value of its services to the traveling public, however, defendants advertise that their products scrape and provide Southwest's fares. Thus, defendants' customers or potential customers are likely to draw the false impression that there is a business relationship between Southwest and defendants.

26.     Southwest has spent significant resources in attempting technologically to block screen-scrapers from accessing Southwest.com. Some scrapers, however, including the defendants, have evaded these website protection measures by "masking," "aliasing," disguising, or otherwise hiding their identities when they scrape Southwest.com. These masking tactics make it difficult or impossible for Southwest to detect the full extent of unauthorized access to its valuable property.

27.     Southwest's proprietary fares and its website resources have substantial commercial value. Therefore, it is highly probable that -- in the absence of an injunction prohibiting defendants' unauthorized conduct -- even more companies will target and use Southwest.com for their own business purposes, without Southwest's consent and to its detriment.

28.     Defendant QL2 manufactures screen-scraping software that it advertises on its website located at www.ql2.com. QL2 describes its scraping devices as automated web "mining" or extraction tools that can penetrate the "deep Web," in contrast to traditional search engines. It has advertised that it scrapes fares from Southwest, and it provides its scraping products to other companies in the travel industry for that purpose.

29. QL2 has touted publicly its sophisticated masking technology to evade blocking efforts and to be able to scrape undetected. QL2's conduct is intentional, and it is based on a business plan that disregards the rights of owners of targeted websites, including Southwest.

30. Defendant Igentica uses, manufactures, develops, and sells screen-scraping software for use by travel industry companies. It states that its Flightmonitor software "emulates someone browsing the airline's website like a robot." Igentica has admitted publicly to scraping Southwest's fares, and it boasts of its ability to mask the identity of its scraping robots to avoid detection by target websites.

31. Defendant PRM devises revenue management software for travel industry entities. Its products incorporate the screen-scraping devices, use the scraping services of QL2 and Igentica, or facilitate the use of screen-scraping software by its customers. Acting in concert with these companies, PRM improperly scrapes or distributes Southwest's fares without authorization.

32. Southwest has no business relationship with defendants, and does not endorse their businesses in any way. In fact, defendants' access and use of Southwest.com is without authorization and in violation of the Use Agreement.

### First Cause of Action
### (Breach of Southwest.com Use Agreement)

33. Southwest realleges the material facts in the preceding paragraphs.

34. The Southwest.com Use Agreement is a valid agreement binding on defendants.

35. Upon defendants' use of Southwest.com, they agreed to be bound by the terms of the Use Agreement.

36.    By accessing Southwest.com, including with robotic scraping devices to extract fares for commercial purposes and gain, without authorization by Southwest, defendants have breached the Use Agreement.

37.    Southwest has been and will continue to be damaged as the result of defendants' breach of the Use Agreement.

38.    In addition, Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants.  Accordingly, Southwest is entitled to injunctive relief and damages.

### Second Cause of Action
### (Trespass)

39.    Southwest realleges the material facts in the preceding paragraphs.

40.    Defendants have intentionally, and without authorization, accessed Southwest.com.  Access to Southwest.com and the proprietary information contained in it is granted only to those users who abide by the terms and conditions of the Use Agreement.  By disregarding the terms and conditions of the Use Agreement, and Southwest's known objections to such activities, defendants have unlawfully gained access to and interfered and intermeddled with Southwest's private property.

41.    Moreover, defendants have used Southwest.com's capacity without permission to enrich their businesses, depriving Southwest of its own resources.  If not stopped, defendants will increase their activities and create the risk that Southwest.com will experience malfunctions and be unable properly to provide service to legitimate customers of Southwest.

42.    Defendants' conduct constitutes trespass that has harmed and will continue to harm Southwest.  As a result, Southwest has been and will continue to be damaged.

43.     In addition, Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Southwest is entitled to injunctive relief.

### Third Cause of Action
### (Violation of Texas Computer Crimes Statute)

44.     Southwest realleges the material facts in the preceding paragraphs.

45.     Defendants have violated § 33.02 of the Texas Penal Code by knowingly, and without effective consent, accessing Southwest.com. Southwest has been harmed by this illegal conduct.

46.     Pursuant to § 143.001 of the Texas Civil Practice and Remedies Code, defendants' knowing and intentional violation of the Texas Penal Code makes them liable for harmful computer access of Southwest.com.

47.     Southwest has been and will continue to be damaged as the result of defendants' violation of the Computer Crimes Statute.

48.     In addition, Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Southwest is entitled to injunctive relief and damages.

### Fourth Cause of Action
### (Computer Fraud and Abuse in Violation of 18 U.S.C. § 1030)

49.     Southwest realleges the material facts in the preceding paragraphs.

50.     Without authorization, defendants intentionally access protected Southwest computers and obtain information involved in an interstate or foreign communication.

51.     In addition, knowingly and with and intent to defraud, defendants access protected Southwest computers without authorization and by means of that conduct further the

intended fraud and obtain value beyond the use of the computer itself, and the value of such use is more than $5,000 in any 1-year period.

52.     In addition, defendants knowingly cause the transmission of a program, information, code, or command, and as a result intentionally cause damage without authorization to Southwest.   In addition, defendants intentionally access a protected computer without authorization, and as a result recklessly cause damage.   In addition, defendants intentionally access a protected computer without authorization, and as a result cause damage.   Such conduct has caused damage to Southwest during the past year of at least $5,000.

53.     Under 18 U.S.C. § 1030(g), Southwest is entitled to compensatory damages and injunctive or other equitable relief.

### Fifth Cause of Action
### (Civil Conspiracy)

54.     Southwest realleges the material facts in the preceding paragraphs.

55.     Defendants have engaged agents, licensees, and affiliates to use their screen-scraping software for the purpose for which it was intended:   to obtain unauthorized access, by robot, spider, or other automatic device, to Southwest's proprietary computer system, including the Southwest.com website and the proprietary content contained in it, all to further their own commercial purposes.   Defendants have acted in combination with numerous agents, licensees, and affiliates, including at times each other, for this unauthorized and unlawful purpose.

56.     The unauthorized access and use of Southwest.com to extract and distribute Southwest's fares by defendants and their agents, licensees, and affiliates is unlawful in a number of ways, including as outlined elsewhere in this Complaint.

57.     Southwest has been damaged as a result of defendants' conspiracy.

COMPLAINT                                -11-

## Attorney Fees

58.     Southwest has been required to retain the services of the undersigned attorneys in the prosecution of this claim.  Pursuant to §§ 38.001 and 143.002 of the Texas Civil Practice and Remedies Code, Southwest seeks to recover its reasonable attorney fees and costs necessarily expended in prosecuting this matter.

## Prayer for Relief

Southwest respectfully requests judgment, after trial or final hearing, as follows:

1.     That the Court enter a judgment against defendants that they have:

a.     Breached the express terms of the Use Agreement for Southwest.com;

b.     Committed trespass to Southwest.com;

c.     Intentionally violated § 33.02 of the Texas Penal Code, rendering them liable under § 143.001 of the Texas Civil Practice & Remedies Code;

d.     Knowingly and with intent to defraud, accessed Southwest's protected computers without authorization, and knowingly caused the transmission of a program or code to Southwest's protected computers, causing damage of at least $5,000 over a one-year period;

e.     Conspired with each other, and with other agents, licensees, or affiliates to unlawfully access and extract data from Southwest.com without authorization;

f.     Otherwise injured the business reputation and goodwill of Southwest by the acts set forth in this Complaint.

2.     That the Court issue preliminary and permanent injunctive relief against defendants, that they and their officers, agents, representatives, servants, employees, attorneys, successors, and assigns, and any and all others in active concert or participating with them, be enjoined and restrained from:

a.     accessing, searching, using, and/or scraping in any way the Southwest.com website, without authorization from Southwest, or in any manner that

**COMPLAINT**                    -12-

violates the Use Agreement, or constitutes trespass to Southwest.com, including for the purpose of updating defendants' software;

        b.    accessing Southwest's protected computers without authorization, and transmitting any program, information, code, or command, which causes damage to Southwest;

        c.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above, including selling, licensing, or otherwise providing to any person or entity any software, including updates to existing software, which is capable of accessing Southwest.com or which facilitates the unauthorized access or use of Southwest's proprietary fare data.

        3.    That the Court order defendants to pay Southwest both the costs of this action and the reasonable attorney fees incurred by it in prosecuting this action; and

        4.    That the Court grant to Southwest such other and additional relief to which Southwest has shown itself to be justly entitled, whether at law or in equity.

**COMPLAINT**           -13-

Respectfully submitted,

Ramona Martinez
State Bar No. 13144010
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, Texas  75202
214-672-2173
214-672-2020 (fax)

**LOCAL COUNSEL FOR
PLAINTIFF SOUTHWEST
AIRLINES CO.**

R. Paul Yetter
State Bar No. 22154200
George H. Fibbe
State Bar No. 24036559
Yetter & Warden, L.L.P.
909 Fannin, Suite 3600
Houston, Texas  77010
713-632-8000
713-632-8002 (fax)

**ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**



JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Southwest Airlines Co.

**DEFENDANTS**
QL2 Software, Inc., Igentica, Ltd., and PROS Revenue Management, L.P.

**(b)** County of Residence of First Listed Plaintiff **Dallas**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**RECEIVED**
AUG - 5 2005
CLERK, U.S. DISTRICT COURT

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See Attachment

Attorneys (If Known)

**3 05CV1558-L**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
X 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 362 Personal Injury - Med. Malpractice | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 640 R.R. & Truck | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 650 Airline Regs. | **LABOR** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 660 Occupational Safety/Health | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 690 Other | ☐ 720 Labor/Mgmt. Relations | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL PROPERTY** | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | X 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 370 Other Fraud | **SOCIAL SECURITY** | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 371 Truth in Lending | ☐ 861 HIA (1395ff) | ☐ 790 Other Labor Litigation | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 380 Other Personal Property Damage | ☐ 862 Black Lung (923) | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 385 Property Damage Product Liability | ☐ 863 DIWC/DIWW (405(g)) | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | **CIVIL RIGHTS** | ☐ 864 SSID Title XVI | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 441 Voting | ☐ 865 RSI (405(g)) | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 442 Employment | **PRISONER PETITIONS** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | ☐ 443 Housing/Accommodations | ☐ 510 Motions to Vacate Sentence | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 444 Welfare | **Habeas Corpus:** | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | | |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)
X 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 1030
Brief description of cause:
Breach of Contract, Trespass, Computer Fraud, and Civil Conspiracy, relating to unauthorized access to airline data.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  X No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
**8.5.05**
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**ATTACHMENT TO CIVIL COVER SHEET**

**I. (c)** Attorney's (Firm Name, Address, and Telephone Number)

Ramona Martinez
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, Texas  75202
214-672-2173

R. Paul Yetter
George H. Fibbe
Yetter & Warden, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
713-632-8000

**ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**